IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:14cr12-JRS |
| ROBERT F. MCDONNELL and | ) | |
| MAUREEN G. MCDONNELL, | ) | |
| Defendants. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT ROBERT F. MCDONNELL'S MOTION
TO EXCLUDE TESTIMONY OF ROBERT SKUNDA AND AMY BRIDGE**

The United States respectfully opposes Mr. McDonnell's motion to exclude the testimony of Robert Skunda and Amy Bridge. Mr. Skunda served as Secretary of Commerce and Trade for former Virginia Governor George Allen and will testify from his personal knowledge and describe the types of meetings and events that the Allen administration held to promote Virginia businesses. This testimony will address ordinary factual questions, such as what types of meetings were held, who typically attended, and why the meetings were generally held. Ms. Bridge was Mansion Director under former Governors Mark Warner and Tim Kaine and will testify about the types of events held at the governor's mansion during the Warner and Kaine Administrations. In seeking to exclude this testimony, Mr. McDonnell makes two arguments. He claims that (a) such testimony must satisfy the rules governing expert testimony, and (b) testimony about what previous Virginia governors did to promote Virginia businesses is irrelevant. Both arguments are wrong.

First, as explained below, Mr. Skunda and Ms. Bridge will testify based on personal knowledge, satisfying Fed. R. Evid. 602, and their testimony will be rationally based on their perceptions, satisfying Fed. R. Evid. 701. Second, their testimony about what former governors

1

did to promote Virginia businesses is also relevant to a basic and extensively litigated question in this case—what actions qualify as "official acts" under the federal corruption laws.

To prove that the McDonnells are guilty of the public corruption counts, the United States must establish that Mr. McDonnell performed official acts and that he agreed to receive things of value in exchange for performing those acts.  In defining what constitutes an official act, the Fourth Circuit has affirmed that an "act may be official even if it was not taken pursuant to responsibilities explicitly assigned by law.  Rather, official acts include those activities that have been clearly established by settled practice as part [of] a public official's position." *United States v. Jefferson*, 674 F.3d 332, 338 (4th Cir. 2012).

The McDonnells have repeatedly disputed that the conduct charged in this case involves official acts, and the testimony from Mr. Skunda and Ms. Bridge is relevant to the test from *Jefferson* because Mr. Skunda and Ms. Bridge will address what other governors customarily did to promote Virginia businesses.  The United States anticipates that the testimony from both Mr. Skunda and Ms. Bridge will be brief.

Mr. Skunda and Ms. Bridge will testify that other governors often hosted events and arranged for meetings like those at issue in this case.  The United States will not, of course, ask either Mr. Skunda or Ms. Bridge to compare what other governors did with what the McDonnells did and state whether the conduct involves an official act; the jury is readily equipped to make that comparison.  Nor will the United States ask Mr. Skunda or Ms. Bridge what constitutes a "settled practice" of Virginia governors or what constitutes an "official act" under the federal corruption laws, much less ask them whether the McDonnells' conduct was legal and ethical.  The jury will be able to listen to this Court's jury instructions and apply them to the facts.  Similarly, after the United States elicits testimony from the witnesses about the meetings and

events held by the governors with whom they worked, the United States will not ask the witnesses to give an opinion on whether a governor could be secretly paid to perform those acts to promote a Virginia business.  The United States will ask, however, Mr. Skunda and Ms. Bridge for general descriptions of the types of meetings and events during the administrations that they know, how often those types of meetings and events occurred, and what the general purposes of those meetings and events were.  Those facts will assist the jury in determining what is customary for a governor to do as part of the governor's official position, and the testimony does not require Mr. Skunda and Ms. Bridge to be qualified as experts.

Although the legal principles governing the testimony described above are straightforward, the United States will briefly review the relevant law.  Rule 602 requires that lay witnesses' testimony must be based on personal knowledge: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony.  This rule does not apply to a witness's expert testimony under Rule 703."  Fed. R. Evid. 602.  Under this standard, Mr. Skunda and Ms. Bridge may rely on their personal experiences in describing common types of meetings and events held by governors.  In applying Rule 602, the Fourth Circuit has allowed witnesses who are not qualified as experts to testify about common occurrences that the witnesses have observed.  For example, because a police officer was familiar with drug dealing in a neighborhood housing project, he could testify that "'a lot of the residents' in the Hickory public housing project sell crack to supplement their incomes." *United States v. Smith*, 451 F.3d 209, 223 (4th Cir. 2006).  Likewise, in applying Rule 602, courts have held that it does not matter that not every part of a witness's testimony on a subject is based solely on direct sensory perception.  *See, e.g., United States v. Neal*, 36 F.3d

1190, 1206 (1st Cir. 1994) (bank employee could testify about bank's status as FDIC insured and its interstate commerce, even when that knowledge derived in part from reviewing records, because personal knowledge under Rule 602 "can include 'inferences and opinions, so long as they are grounded in personal observation and experience'").

Although it seems an overstatement to say that Mr. Skunda and Ms. Bridge will be offering opinion testimony at all, rather than simply testimony about facts, to the extent their testimony could be characterized as opinion testimony, it will fall easily within Fed. R. Evid. 701. Under Rule 701, a lay witness may draw inferences that are "rationally based on the witness's perception," if those inferences require no specialized expertise. *See, e.g., United States v. Hassan*, 742 F.3d 104, 135-36 (4th Cir. 2014) (witnesses could draw inferences about conversations in which they participated); *United States v. Min*, 704 F.3d 314, 324-25 (4th Cir. 2013) (same). Although "Rule 701 forbids the admission of expert testimony dressed in lay witness clothing," Rule 701 "does not interdict all inference drawing by lay witnesses." *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006).

The testimony from Mr. Skunda and Ms. Bridge will comply with these standards. They will testify about events in which they participated and had personal experience; their testimony will be helpful to the jury in determining a fact in issue, namely, whether official acts were performed in this case; and their testimony about meetings and events and their frequency will not involve specialized knowledge within the scope of Rule 702.

Mr. McDonnell insist that Mr. Skunda's and Ms. Bridge's testimony must be expert testimony because it is relevant to whether the standard for an official act has been satisfied, and the government provided expert testimony on that subject in another public corruption case. *See United States v. Jefferson*, 623 F.Supp.2d 683 (E.D.Va. 2009). In *Jefferson*, former

Congressman Matthew F. McHugh reviewed the actions performed by defendant and former Congressman William J. Jefferson and gave his opinion about whether Jefferson's actions fell among the "settled practices" of Congressmen and counted as matters "routinely brought before Members in their official capacity." *Id*. at 687-88.  Neither Mr. Skunda nor Ms. Bridge will testify using such language and instead will simply describe meetings and events that regularly occurred.  Again, their testimony will not in any important sense involve giving opinion testimony.  And equally important, they will testify about their own experiences and will not give an opinion about the McDonnells' conduct.

In seeking to exclude Mr. Skunda's and Ms. Bridge's testimony, Mr. McDonnell also invokes *United States v. Elliott*, 89 F.3d 1360 (8th Cir. 1996).  In that case, a defendant who had worked part-time as a special assistant attorney general in the state of Missouri was convicted of submitting fraudulent legal bills to the state during his employment.  As part of his defense, he wanted to submit evidence about what he said were "routine practices of the Office of the Missouri Attorney General and other special assistants" so that he could "show that mistakes were common in the manner in which [the bills] were handled by the Attorney General's Office."  *Id.* at 1368-69.  The Eighth Circuit affirmed the district court's ruling excluding this evidence because it was irrelevant to "whether Elliot intentionally defrauded the state by knowingly submitting false bills."  *Id*. at 1369.  This ruling has no bearing on the relevancy of the evidence from Mr. Skunda and Ms. Bridge that will help the jury determine what are "activities that have been clearly established by settled practice as part [of] a [Virginia governor's] official's position."  *Jefferson*, 674 F.3d at 338.

In sum, Mr. McDonnell's motion should be denied.

|  |  | Respectfully submitted, |
|---|---|---|
| DANA J. BOENTE<br>United States Attorney |  | JACK SMITH<br>Chief, Public Integrity Section<br>Criminal Division<br>U.S. Department of Justice |
| By: _____/s/_____<br>Richard D. Cooke<br>Michael S. Dry<br>Jessica D. Aber<br>Ryan S. Faulconer<br>Counsel for the United States<br>U.S. Attorney's Office<br>600 E. Main Street, Suite 1800<br>Richmond, Va. 23219<br>Phone: 804-819-5400<br>Fax: 804-771-2316<br>Email: richard.cooke@usdoj.gov<br>　　　　michael.s.dry@usdoj.gov<br>　　　　jessica.d.aber@usdoj.gov<br>　　　　ryan.faulconer2@usdoj.gov | By: | _____/s/_____<br>David V. Harbach, II<br>Counsel for the United States<br>U.S. Department of Justice<br>Criminal Division<br>Public Integrity Section<br>1400 New York Ave., N.W., Ste 12100<br>Washington, D.C. 20005<br>Phone: 202-514-1412<br>Fax: 202-514-3003<br>Email:  david.harbach@usdoj.gov |

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 7, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                          By:        /s/
                                                Richard D. Cooke
                                                Counsel for the United States
                                                U.S. Attorney's Office
                                                600 E. Main Street, Suite 1800
                                                Richmond, VA 23219
                                                Phone: 804-819-5400
                                                Fax: 804-771-2316
                                                Email: richard.cooke@usdoj.gov