UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT F. MCDONNELL,<br><br>and<br><br>MAUREEN G. MCDONNELL,<br><br>Defendants. | Action No. 3:14-CR-12 |

### MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Maureen G. McDonnell's Motion #25– Motion for Judgment of Acquittal Pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Motion") (ECF No. 514). The Government filed an Opposition Memorandum ("Opp'n Mem.") (ECF No. 533) on October 14, 2014. Mrs. McDonnell subsequently filed a reply on October 24, 2014 ("Reply Mem.") (ECF No. 544). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. E.D. Va. Loc. Crim. R. 47(J). For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

Defendant Robert F. McDonnell ("Mr. McDonnell") served as the 71st Governor of the Commonwealth of Virginia from January 2010 to January 2014. His wife, Maureen G. McDonnell ("Mrs. McDonnell"), served as the First Lady of Virginia.

During his campaign for Governor, the McDonnells became acquainted with Jonnie Williams ("Williams"). Williams was the Chief Executive Officer of Star Scientific, Inc. ("Star Scientific"). Beginning in or about 2007, Star Scientific focused on utilizing certain alkaloids in the tobacco plant, namely anatabine, to address issues related to the desire to smoke. The

1

company engaged in the development, manufacture, and marketing of two anatabine-based dietary supplements: CigRx and Anatabloc. To gain customer and physician approval of its products, Star Scientific sought scientific studies of anatabine.

On January 21, 2014, Mrs. McDonnell, along with her husband, was charged in a fourteen count indictment. On September 4, 2014, a jury convicted Mrs. McDonnell on Counts 1–3, 5–8, 10 and 14 of the indictment, which alleged committing, and conspiring to commit, honest services wire fraud and extortion under color of official right, and obstruction of justice.

On September 18, 2014, Mrs. McDonnell filed the instant Motion, asking for a judgment of acquittal on the aforementioned Counts. Mrs. McDonnell joins in Mr. McDonnell's Motion for Judgment of Acquittal (ECF No. 509). She contends that the Government's failure to show that Mr. McDonnell performed or promised to perform any "official act" for Williams is fatal to the charges against her because she was not a public official and thus cannot be convicted of those charges in her own right. Furthermore, with respect to the obstruction charge alleged in Count 14 of the indictment, Mrs. McDonnell argues that the Government failed to offer evidence showing that (1) the letter she gave to Williams was false, (2) she intended to obstruct, influence or impede a federal grand jury proceeding, or (3) her conduct, if successful, would have the natural and probable effect of interfering with the due administration of justice.

## II.     LEGAL STANDARD

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). If the jury returned a guilty verdict, the court can "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

The test for determining if a court should grant a Rule 29(c) motion is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). Substantial evidence is

defined as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996). If "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt," the jury's verdict must stand. *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993).

### III. DISCUSSION

#### A. Claim 1: The Governor Did Not Perform or Promise to Perform Any "Official Acts" to Benefit Williams, and As a Private Citizen, Mrs. McDonnell Cannot be Guilty in Her Own Right

Mrs. McDonnell notes that there is no dispute that as First Lady of Virginia, she was not a public official. Thus, she did not owe any honest services to the citizens of Virginia and had no public office to corrupt. Rather, she argues that the Government's theory was based on her alleged conspiracy with her husband to corrupt his public office. Mrs. McDonnell therefore argues that the corruption charges against her necessarily rise or fall with the Government's case against Mr. McDonnell. She joins Mr. McDonnell's Motion for Judgment of Acquittal (ECF Nos. 509, 510), in which Mr. McDonnell argues that the Government has failed to establish that he agreed (or conspired) to perform "official acts" in exchange for receiving things of value from Williams.

As described in detail in the memorandum opinion denying Mr. McDonnell's Motion for Judgment of Acquittal, Mr. McDonnell did perform or promise to perform official acts to benefit Williams. Therefore, both Mr. and Mrs. McDonnell were properly convicted by the jury of violating the honest services wire fraud statute and the Hobbs Act.

#### B. Claim 2: No Evidence That Mrs. McDonnell Intended to Obstruct a Grand Jury Proceeding

In March of 2013, Mrs. McDonnell delivered to Williams' brother, Donnie Williams, a box which contained clothing that Williams had purchased for Mrs. McDonnell in April 2011, along with a handwritten note. The note stated in part:

3

> I truly hope your daughter will now be able to enjoy these lovely outfits and show them off on many grand occasions. If not, I'm sure there are many exemplary charitable organizations like we talked about who would welcome the opportunity to auction them for a wonderful cause, having been worn only once by the First Lady of Virginia to her daughter's wedding at the Executive Mansion and celebrating her 35th wedding Anniversary with the Governor!

Gov't Ex. 3. The indictment alleged that with this note, Mrs. McDonnell "falsely attempted to make it appear that she and [Williams] had previously discussed and agreed that [she] would return certain designer luxury goods rather than keep them permanently." Indictment ¶ 123. Mrs. McDonnell now argues that the Government failed to adduce evidence to establish the elements required to sustain a conviction of obstruction under 18 U.S.C. § 1512(c)(2).

Generally, to support a conviction under § 1512(c)(2), the Government must prove that the defendant corruptly obstructed, influenced, or impeded an official proceeding or attempted to do so. 18 U.S.C. § 1512(c)(2). The statute, however, does not require that an official proceeding be pending or about to be instituted at the time of the offense, 18 U.S.C. § 1512(f)(1), nor does it require that the defendant know the proceeding is federal in nature, *id.* at § 1512(g)(1).

As an initial matter, Mrs. McDonnell first argues, based solely on the Eleventh Circuit case of *United States v. Thomas*, 916 F.2d 647 (11th Cir. 1990), that the note she sent to Williams did not contain a literal false statement and thus her conviction on Count 14 cannot stand.[1] However, neither controlling case law nor the plain language of § 1512(c)(2) requires the limitation Mrs. McDonnell seeks to impose. Instead the statute only requires that the defendant act "corruptly."[2] Regardless, the note undoubtedly attempted to mislead authorities to believe that Mrs. McDonnell had previously discussed returning the dresses to Williams. Viewing the evidence in light most favorable to the Government, and accounting for the temporal sequence

---

[1] In interpreting 18 U.S.C. § 1505 ("Whoever corruptly . . . influences, obstructs, or impedes . . . the due and proper administration of the law . . . ."), the United States Court of Appeals for the District of Columbia held that "[e]ven a literal true statement may be misleading and so . . . literal truth may not be a complete defense to obstruction." *United States v. Safavian*, 528 F.3d 957, 968 (D.C. Cir. 2008).
[2] This term was defined in the Court's instruction as acting "voluntarily, deliberately, and for the purpose of improperly obstructing, influencing, or impeding an official proceeding." Tr. Vol. XXVI 6120:11–14.

of Mrs. McDonnell's interview with the Federal Bureau of Investigation ("FBI") and her subsequent delivery of the note to Donnie Williams along with Williams' testimony that the note was a "fabrication," Tr. Vol. IV 837:8–10, substantial evidence exists to support the jury verdict that Mrs. McDonnell acted with corrupt intent. However, obstruction of justice requires more than just a misleading note.

The Supreme Court in *Aguilar*[3] further defined the obstruction of justice standard by holding that it is not enough that the defendant intended to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority. *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (citation omitted). Rather, the action taken by the accused must be with the intent to influence judicial or grand jury proceedings. *Id.* The Court defined this element as a "'nexus requirement'–that the act must have a relationship in time, causation, or logic with the judicial proceedings." *Id.* (citations omitted). "In other words, the endeavor must have the 'natural and probable effect' of interfering with the due administration of justice." *Id.* (citations omitted). Thus, "if the defendant lacks *knowledge that his actions are likely to affect the judicial proceeding*, he lacks the requisite intent to obstruct." *Id.* (emphasis added); *see also United States v. Schwarz*, 283 F.3d 76, 109 (2d Cir. 2002) ("[T]he conduct offered to evince that [specific] intent must be conduct that is directed at the court or grand jury and that, in the defendant's mind, has the 'natural and probable effect' of obstructing or interfering with that entity."). Thus, an "official proceeding" must at least be foreseeable at the time of the obstructive act before a person can be liable for obstruction of justice. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707–08 (2005).[4]

The Court's charge to the jury summarized these standards by stating that to prove

---

[3] The Supreme Court in *Aguilar* addressed the intent element under 18 U.S.C. § 1503, not § 1512 that is at issue here. However, other circuits have applied the *Aguilar* nexus requirement to § 1512(c)(2), *see United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009); *United States v. Reich*, 479 F.3d 179, 186 (2d Cir. 2007); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009), and this Court follows suit.

[4] The Supreme Court in *Arthur Anderson* was faced with a violation of 18 U.S.C. § 1512(b). However, in interpreting § 1512(e)(1), which states that an official proceeding "need not be pending or about to be instituted at the time of the offense," the Court applied the *Aguilar* nexus requirement.

obstruction of an official proceeding,

> [T]he government must prove three essential elements beyond a reasonable doubt. First: That the defendant obstructed, influenced, or impeded an official proceeding, or attempted to do so. Second: That the defendant did so or attempted to do so corruptly; that is, voluntarily, deliberately, and for the purpose of improperly obstructing, influencing, or impeding an official proceeding. And third: That the defendant either knew about an official proceeding or that the natural and probable effect of the conduct would interfere with an official proceeding.

Tr. Vol. XXVI 6120:7–17.

In the present Motion, the parties dispute whether or not Mrs. McDonnell was required to know of the *specific* proceeding she allegedly intended to obstruct. In other words, did the Government need to prove that Mrs. McDonnell intended to obstruct the federal proceeding charged in the indictment? Mrs. McDonnell answers in the affirmative, while the Government argues that the plain language of the statute and the Tenth Circuit's holding in *Phillips*, 583 F.3d 1261, does not require such knowledge.

In construing *Aguilar*, the *Phillips* Court stated that "§ 1503 requires that a defendant's obstructive conduct have a nexus in time, causation, or logic *with the proceeding the defendant is charged with obstructing.*" *Id.* at 1263–64 (emphasis added). Similarly, the Supreme Court in interpreting § 1503 has held that "'a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in *such* court.'" *Aguilar*, 515 U.S. at 599 (quoting *Pettibone v. United States*, 148 U.S. 197, 206 (1893)) (emphasis added). Thus, Mrs. McDonnell had to know of the specific grand jury referenced in the indictment.

But besides merely knowing of the specific grand jury, the Court must also examine whether Mrs. McDonnell had knowledge that her actions were likely to affect such proceeding, or else she lacked the requisite intent to obstruct. *See Schwarz*, 283 F.3d at 109 (quoting *Aguilar*, 515 U.S. at 601) ("[T]he [respondent's] mere knowledge of the pending grand jury investigation 'would not enable a rational trier of fact to conclude that respondent *knew* that his

6

false statement would be provided to the grand jury.'") In *Aguilar*, the respondent made false statements to an investigating agent after being told that he was the target of a grand jury investigation. 515 U.S. at 600. But even though the respondent knew of a pending official proceeding, the Supreme Court nonetheless held that he could not be charged with obstruction under § 1503 because a "rational trier of fact [could not] conclude that respondent knew that his false statement would be provided to the grand jury." *Id.* at 601. In other words, the Government failed to prove the required specific intent to obstruct the federal proceeding. Rather, the Supreme Court held that such evidence was too speculative and could not be said to have the "natural and probable effect" of interfering with the due administration of justice. *Id.*

Here, Mrs. McDonnell's conduct in providing the note to Donnie Williams was far more attenuated from any potential grand jury investigation than respondent's conduct in *Aguilar*. Although Mrs. McDonnell may have hoped that the misleading note would be provided to the future grand jury, there is insufficient evidence to enable a rational trier of fact to conclude that Mrs. McDonnell knew this would happen. *See Schwarz*, 283 F.3d at 109. There was no evidence adduced at trial to show that she was aware of either the existence or possibility of the specific grand jury proceeding referenced in the indictment.[5] Indeed, according to testimony from the Government's own witness, Special Agent Charles Hagan, there was no federal grand jury investigation into the McDonnells at the time the charged conduct occurred. Tr. Vol. XII 2992:22–2993:3. And Mrs. McDonnell was even affirmatively told by her then-counsel Emmet Flood that there was no federal grand jury proceeding. Tr. Vol. XXIII 5521:13–14; 5512:13–5513:3. Mrs. McDonnell had not received a federal grand jury subpoena or any indication that her note would be provided to the federal grand jury. Thus, the government failed to meet its burden to prove Mrs. McDonnell's "intent to obstruct the federal grand jury for 'if the defendant lacks knowledge that [her] actions are likely to affect the judicial proceeding, [she] lacks the

---

[5] Based on the evidence adduced at trial, Mrs. McDonnell was only aware of a federal investigation into Williams for securities fraud and a state investigation of the McDonnells into potential violations of Virginia law. Because neither of these proceedings was charged in the indictment, neither can form the basis for a conviction on Count 14. *See Aguilar*, 515 U.S. at 599 (quoting *Pettibone*, 148 U.S. at 206).

7

requisite intent to obstruct.'" *Id.* (quoting *Aguilar*, 515 U.S. at 599).

Even viewing the evidence in light most favorable to the Government, there is insufficient evidence to warrant a guilty verdict on Count 14.

## IV.   **CONCLUSION**

For the foregoing reasons, Mrs. McDonnell's Motion is GRANTED in part and DENIED in part. Specifically, the Motion is GRANTED as to Claim 2 and DENIED as to Claim 1.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this   1st    day of December 2014.